IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEREK SMITH** | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| **ROBERT SHANNON, SUPT., THE** | : | |
| **DISTRICT ATTORNEY OF THE COUNTY** | : | |
| **OF PHILADELPHIA (LYNN ABRAHAM),** | : | |
| **THE ATTORNEY GENERAL OF THE** | : | |
| **STATE OF PENNSYLVANIA** | : | NO. 05-1431 |

**MEMORANDUM AND ORDER**

**NORMA L. SHAPIRO, S.J.**                                                                                   **JANUARY 7, 2008**

Petitioner Derek Smith ("Smith") has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, more than six years after he was convicted and sentenced *in absentia* for robbery, assault, and theft by unlawful taking. The Honorable Timothy R. Rice, United States Magistrate Judge, filed a Report and Recommendation finding Smith's habeas petition untimely and finding Smith not entitled to equitable tolling. Smith filed counseled objections claiming he is entitled to equitable tolling of the one-year limitation on his habeas petition for two reasons: (1) from December 7, 1998, the date Smith's conviction became final, to January 23, 2001, the date he was given formal notice of his sentence, Smith had no knowledge that he had been convicted or sentenced; (2) from May 30, 2001, when he moved for production of his trial and sentencing transcripts, to December 1, 2004, Smith was not provided any transcripts or notes of testimony from his *in absentia* trial or sentencing.

**I.     FACTS AND PROCEDURAL HISTORY**

In March 1996, Smith was arrested and charged with robbery, assault, and theft by

unlawful taking. At the time of his arrest, Smith was residing at 2234 Cross Street in Philadelphia. The arresting officer recorded 2234 Ellsworth Street as Smith's address in the arrest paperwork, though Smith claims he gave the police his correct address. After his arrest, Smith was granted release on bail. The bail commissioner recorded 2124 Ellsworth Street as Smith's current address on his bail application, and 1245 Bonsall Street as Smith's previous home address of fourteen years. Smith signed the bail application, but later testified he did not read the application before signing it. (Hr'g Tr. 42, Aug. 16, 2006.)

During the next two-and-a-half years, Smith remained in custody and was held in a number of state and federal institutions. He was not brought to court in Philadelphia during that time period. In early 1998, Smith was released from a Miami, Florida prison, and reported to the Criminal Justice Center in Philadelphia for a court date addressing his outstanding charges.

On April 28, 1998, Smith appeared in court with his court-appointed attorney, Jean Purnell, Esq. Purnell informed the court she was not prepared for trial because she did not have Smith's file and knew nothing about his criminal case. The proceedings were continued until June 29, 1998. Smith signed a trial subpoena ordering him to appear on that date.

At a later evidentiary hearing before this court, Smith testified he did not read the subpoena. (Hr'g Tr. 22, Aug. 16, 2006.) Smith testified his trial counsel Purnell told him trial would not proceed on June 29, 1998, because she had another case scheduled for the same date. Id. Smith also testified that Purnell told him not to come to court for the June 29, 1998, trial date, and she would contact him with a new date. (Hr'g Tr. 23, Aug. 16, 2006.) According to Smith, before the June 1998 trial date, he attempted to contact Purnell once by visiting her office and once by telephone. (Hr'g Tr. 25, Aug. 16, 2006.) On both occasions, he was told Purnell

was unavailable and that she would contact him. Id. Smith never heard from Purnell. (Hr'g Tr. 25-26, Aug. 16, 2006.)

Smith did not appear in court on June 29, 1998. His trial counsel, Purnell, also failed to appear. (N.T. 6/29/98, at 2-3.) The trial judge issued a bench warrant, and the prosecutor moved for the trial to proceed *in absentia*. (N.T. 6/29/98, at 2.) On June 30, 1998, Purnell appeared but Smith did not. Purnell represented that Smith had attempted to contact her about his case, but when she called the phone number she had for Smith, the person who answered the telephone "had not seen him." (N.T. 6/30/98, at 3-4.) Purnell stated that Smith "[a]bsolutely" knew about his trial listing, and that she did not "know if he's alive or dead." (N.T. 6/30/98, at 3, 5.) The prosecutor informed the court she had verified Smith was not in state or local custody, the morgue, or specified area hospitals. (N.T. 6/30/98, at 6-8.) The prosecutor also represented that a Philadelphia police officer attempted to locate Smith at 2234 Ellsworth Street the previous night, but the person who answered the door stated he had lived there for six years and Smith did not live at that address. (N.T. 6/30/98, at 7.) The trial court granted the Commonwealth's request to proceed *in absentia*.

Jury selection and trial began on June 30, 1998, and trial concluded on July 1, 1998. Smith was not present for either day of his trial. The jury found Smith guilty of robbery, assault, and theft by unlawful taking.

On November 4, 1998, following several continuances, Smith was sentenced *in absentia*. Purnell stated to the sentencing court that she did not know whether Smith was alive. (N.T. 11/4/98, at 3.) At sentencing, the judge imposed the maximum sentence of 10 to 20 years in prison because Smith had three prior robbery convictions, a theft conviction, and eight probation

and parole violations.  (N.T. 11/4/98, at 6-7.)  The judge stated Smith's criminal history showed he "has no interest in complying with the laws of the State of Pennsylvania." (N.T. 11/4/98, at 7-8.)

After he was tried and sentenced *in absentia*, Smith did not attempt to contact Purnell or check on the status of his case.  (Hr'g Tr. 36-39, Aug. 16, 2006.)  He later testified he believed the case had been dismissed.  (Hr'g Tr. 26, Aug. 16, 2006.)  He did not receive any documents notifying him the case had been dismissed.  (Hr'g Tr. 38, Aug. 16, 2006.)

On December 31, 2000, Smith was arrested on a bench warrant for unrelated charges. After Smith was arrested and fingerprinted, he was identified as the individual who had been convicted *in absentia* and for whom a bench warrant had been issued in 1998.  On January 23, 2001, the trial judge formally imposed the 10 to 20 year sentence on Smith.  Purnell was then deceased.  The judge ordered an attorney to stand with Smith during the formal sentencing. Smith did not consult with the attorney except for a brief conversation on the record.

Smith was transferred to the custody of the Department of Corrections.  On May 30, 2001, he filed a motion in the Court of Common Pleas for production of the transcripts from his *in absentia* trial and sentencing.  (Counseled Mem. in Supp. of Pet.'s Objections, Ex. A at 7.)  On July 17, 2001, Smith filed an application for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541-9546.  By order dated November 26, 2001, the PCRA court denied Smith's application for relief.  Smith filed a notice of appeal, but the notice of appeal was rejected as untimely.

On May 1, 2002, Smith filed a motion to restore his right to appeal and asserted his notice of appeal was timely because he gave it to prison officials for mailing within 30 days of the

4

judgment. The trial court construed the motion as a second application for postconviction relief and denied it. On June 3, 2002, Smith filed a second notice of appeal.

On August 15, 2002, the PCRA court filed an opinion in support of its first order denying Smith's PCRA petition. The court found Smith "knowingly, voluntarily, and without justification failed to appear at the designated time and place of the trial." Commonwealth v. Smith, No. 1863 EDA 2002, slip op. at 5 (Pa. Commw. Aug. 15, 2002).

On appeal on November 10, 2003, the Superior Court of Pennsylvania found Smith's "bare allegations that trial counsel failed to apprise him of the trial date do not undermine the PCRA court's determination that [Smith] 'knowingly, voluntarily, and without justification failed to appear at the designated time and place of trial.'" Commonwealth v. Smith, No. 1863 EDA 2002, slip op. at 4 (Pa. Super. Nov. 10, 2003). The court noted that Smith's signed subpoena for the date of trial supported the PCRA court's finding. Id. at 4-5. The Superior Court held Smith's initial application for postconviction relief was jurisdictionally time-barred, and affirmed the trial court's order. Id. at 5.

On December 1, 2003, Smith filed a motion to extend his time to seek discretionary review by the Supreme Court of Pennsylvania. The time to petition the Supreme Court of Pennsylvania for discretionary review expired on December 11, 2003. On May 7, 2004, the Supreme Court of Pennsylvania denied Smith's motion to extend the time to seek review. On May 17, 2004, Smith filed a document captioned as an original petition for a writ of habeas corpus in the Supreme Court of Pennsylvania. The Supreme Court of Pennsylvania denied the petition on August 30, 2004.

Between 2001 and July 2004, Smith submitted his state court filings with the assistance

of Kenneth McIntyre, a self-described "jailhouse lawyer." (McIntyre Dep. 40:22-24, Sept. 27, 2006.) During that time period, neither Smith nor McIntyre had access to transcripts from Smith's *in absentia* trial and sentencing. Smith testified before this court that he believed he could not file an effective federal petition for writ of habeas corpus without the transcripts of his trial and sentencing. (Hr'g Tr. 33, Aug. 16, 2006.) Smith filed an action seeking production of the transcripts under 42 U.S.C. § 1983. The trial transcripts were produced to Smith during the first week of December 2004.

On March 11, 2005, Smith signed a petition for writ of habeas corpus; it was filed of record with this court on March 25, 2005. In his petition, Smith claimed he was denied the right to be present at trial and denied his trial and sentencing transcripts. Smith seeks as relief the opportunity to enter a guilty plea. (Hr'g Tr. 69, Aug. 16, 2006.) The court referred Smith's habeas petition to Magistrate Judge Rice for a report and recommendation. The Magistrate Judge recommended that Smith's petition be denied as untimely and that Smith be found not entitled to equitable tolling because he was a fugitive until December, 2000. The court appointed counsel for Smith, gave counsel leave to file supplemental briefs, and ordered an evidentiary hearing. In his counseled, supplemental objections, Smith argued he was entitled to equitable tolling of the deadline for filing a habeas petition because: (1) trial counsel did not inform him of his trial date or sentencing; and (2) he was not provided with transcripts of his *in absentia* trial or sentencing. Smith also filed a motion *in limine* to admit the testimony of Ellen Greenlee, Esq., Chief Defender of the Defender Association of Philadelphia. The court granted the motion *in limine*.

At the evidentiary hearing regarding equitable tolling, Greenlee testified that Smith's trial counsel, Purnell, had a history of irresponsible conduct in representing defendants in criminal

cases. She testified: while Purnell was employed at the Defender Association of Philadelphia, her client files and prison records showed she failed to meet with her incarcerated clients in 21 separate cases in violation of Defender Association policy; when confronted with her failure to meet her clients, Purnell stated she had met with them; Purnell requested jury trials for four or five clients without having consulted them; and after she left the Defender Association, Purnell had difficulty in her private criminal defense practice. After the evidentiary hearing, respondents filed a motion to strike Greenlee's testimony. The court heard argument on respondents' motion to strike and equitable tolling of the deadline for Smith's habeas petition.

For the following reasons, respondents' motion to strike will be denied as moot. The Magistrate Judge's Report and Recommendation will be approved and adopted, and Smith's objections will be overruled. Smith's petition for writ of habeas corpus will be denied as untimely.

## II.   DISCUSSION

### A.   Motion to Strike

Respondents move to strike Greenlee's testimony as impermissible habit evidence under Federal Rule of Evidence 404. The Federal Rules of Evidence apply in habeas proceedings brought under 28 U.S.C. § 2254. Fed. R. Evid. 1101(e). Under Federal Rule of Evidence 404(a), evidence of a person's character or character trait generally is not admissible to show the person acted in conformity with that character or character trait on a particular occasion. At the evidentiary hearing before this court, Greenlee testified that in 1989, Purnell was assigned to the Felony Waiver Program at the Defender Association for several months. (Hr'g Tr. 71, Aug. 16, 2006.) Greenlee testified the client files and prison logs show Purnell failed to interview 21 of

her incarcerated clients in violation of Defender Association policy. (Hr'g Tr. 74, Aug. 16, 2006.) The purpose of Greenlee's testimony is to show Purnell's irresponsible actions at the Defender's Association in 1989 are consistent with Purnell's alleged failure to notify Smith of his trial date in 1998.

Smith argues Greenlee's testimony is admissible because respondents opened the door to rebuttal when they stated it was "virtually unimaginable" that Purnell would fail to inform Smith of his trial. (Resp. to Pet.'s Supplemental Mem. of Law 1-2.) Federal Rule of Evidence 404(a) provides three exceptions to the general prohibition of character testimony: (1) in a criminal case, if a defendant introduces evidence of a pertinent character trait, the prosecution may introduce rebuttal evidence; (2) in a criminal case, if a defendant introduces evidence of the character of the alleged victim, the prosecution may introduce rebuttal evidence, or the prosecution may introduce evidence of peacefulness of the alleged victim to rebut evidence that the alleged victim was the first aggressor; and (3) parties may introduce evidence of the character of a witness to attack the witness's credibility.[1] Fed. R. Evid. 404(a). Respondents have not introduced any evidence regarding Purnell's character for Smith to rebut. At most, respondents' argument that Purnell's alleged actions were "virtually unimaginable" is based on conjecture, not admissible evidence. Even if respondents' argument constituted evidence, the exceptions to Fed. R. Evid. 404 for rebuttal evidence do not apply to Greenlee's testimony because Purnell is not a defendant or an alleged victim in this action.

---

[1] Federal Rule of Evidence 404(b) also provides evidence of other crimes, wrongs, or acts may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," but Smith does not argue Greenlee's testimony is admissible under Fed. R. Evid. 404(b).

The court finds Greenlee's testimony unconvincing to prove Smith's allegations. Purnell's alleged actions at the Defender's Association in 1989 are not sufficiently probative to show that, nine years later, Purnell incorrectly told Smith his trial date would be continued and failed to contact him when trial proceeded on June 30, 1998. Whether or not respondents' motion to strike is granted, Greenlee's testimony bears no weight in this court's equitable tolling decision. Respondents' motion to strike will be denied as moot.

**B.     Equitable Tolling**

A district court reviews *de novo* those portions of a magistrate judge's report and recommendation to which objection is made. See 28 U.S.C. § 636(b)(1)(c). Smith filed counseled objections to the Magistrate Judge's finding that he is not entitled to equitable tolling. The Magistrate Judge's recommendation regarding Smith's equitable tolling arguments is subject to *de novo* review.

Section 2244(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides, in relevant part:

> (1)     A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> . . .
> (2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Smith was sentenced *in absentia* on November 4, 1998. His sentence became final on December 7, 1998, when his time to file a notice of appeal expired. See 42 Pa. C.S.

§ 9545(b)(3). Since Smith's federal habeas petition was not signed until March 11, 2005, it is untimely under the AEDPA's one year period of limitation, 28 U.S.C. § 2244(d)(1)(A).

The one year limitation is subject to two exceptions: (1) statutory tolling while a "properly filed" application for state post-conviction review is pending in state court; and (2) equitable tolling, "a judicially crafted exception." Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003). Smith is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) because his PCRA petition was dismissed as untimely. See Pace v. DiGuglielmo, 125 S. Ct. 1807, 1814 (2005) (untimely PCRA petition is not "properly filed" under § 2244(d)(2)).

Smith claims he is entitled to equitable tolling of two periods: (1) from December 7, 1998, the date his conviction became final, to January 23, 2001, the date he was formally sentenced and received notice he was tried and sentenced *in absentia*; and (2) from May 30, 2001, his first attempt to obtain his missing transcripts, to December 1, 2004, the date the transcripts were obtained.

The AEDPA's one year filing deadline can be subject to equitable tolling "only when the principle of equity would make the rigid application of a limitation period unfair." Miller v. New Jersey Dept. of Corr., 145 F.3d 616, 618 (3d Cir. 1998). Courts should be sparing in their use of equitable tolling. LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005). Equitable tolling is permitted if: (1) "the defendant has actively misled the plaintiff"; (2) "the plaintiff has in some extraordinary way been prevented from asserting his rights"; or (3) "the plaintiff has timely asserted his rights mistakenly in the wrong forum." Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (citations omitted). "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary circumstances'

required for equitable tolling." Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).  In addition to showing some extraordinary circumstance, a litigant seeking equitable tolling bears the burden of establishing he has been pursuing his rights diligently.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

Smith argues he is entitled to equitable tolling from December 7, 1998, to January 23, 2001, because his trial attorney's alleged failure to notify him of his trial date constituted extraordinary circumstances; but state court findings contradict Smith's argument.  The Superior Court accepted the PCRA court's finding that Smith "knowingly, voluntarily and without justification failed to appear at the designated time and place of the trial." Commonwealth v. Smith, No. 1863 EDA 2002, slip op. at 4 (Pa. Super. Nov. 10, 2003).  A federal habeas court must presume the state court's determination of factual issues is correct unless rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The subpoena Smith signed notified him that his trial date was June 29, 1998; this supports the state court's determination.

Smith testified he did not read the subpoena before signing it, and his trial attorney, Jean Purnell, Esq., told him trial would not proceed on June 29, 1998, because she had another case to try on that date.  Consistent with Smith's testimony, Purnell did not appear for Smith's trial on June 29, 1998.  But Smith received no documents from the court to suggest that trial would not proceed on June 29, 1998, and his testimony that he did not read his subpoena lacks indicia of credibility.  Even if Purnell told Smith his trial would be rescheduled, Smith had an obligation to stay in contact with her to find out his new trial date.  The court is bound by the state court's factual determination that Smith knowingly, voluntarily, and without justification failed to appear for trial; Smith has not produced clear and convincing evidence in rebuttal.  Smith has not shown

that his counsel's alleged failure to notify him of his trial date constitutes extraordinary circumstances justifying equitable tolling of the AEDPA's one year limitation.

Even if the state court finding was rebutted by clear and convincing evidence, in addition to showing extraordinary circumstances, Smith must show he exercised due diligence. See Schleuter v. Varner, 384 F.3d 69, 77 (3d Cir. 2004) ("a finding that attorney malfeasance is an extraordinary circumstance, without more, is not sufficient to warrant equitable tolling"). For a petitioner to claim entitlement to equitable tolling, he must show he "exercised reasonable diligence in bringing the claims." LaCava, 398 F.3d at 277; Miller, 145 F.3d at 618-19. This obligation pertains both to exhausting state remedies and the filing of the federal habeas petition. LaCava, 398 F.3d at 277. While due diligence "does not require the maximum feasible diligence," it requires "reasonable diligence in the circumstances." Id.; Schleuter, 384 F.3d at 74.

In Schleuter, the filing deadline for petitioner's PCRA petition was in mid-January, 1997. Id. at 72. By letter dated November, 1996, petitioner informed his attorney of the deadline and asked him to file a timely PCRA petition. Id. Petitioner's attorney replied by one letter to petitioner and a separate letter to petitioner's parents, both dated December, 1996, that he would file a PCRA petition before the end of the year. Id. The attorney did not file a PCRA petition and did not communicate with petitioner or his parents. Id. In March, 1997, petitioner inquired into the status of his PCRA petition and the clerk of court informed him that no one had filed a PCRA petition on his behalf. Id. When considering petitioner's claim for equitable tolling, the Court of Appeals emphasized that petitioner did not attempt to ascertain from his counsel, prior to the deadline, whether counsel in fact had filed a PCRA petition. Id. at 77. The Court of Appeals also noted that the AEDPA's one year limitation period did not begin to run until nearly

nine years after petitioner's conviction became final in 1987.  Id.  The court found equitable tolling not warranted after such a lengthy period of time elapsed following petitioner's conviction before petitioner sought state and federal relief.  Id.

In LaCava, petitioner's counseled PCRA petition had been denied in state court.  LaCava, 398 F.3d at 273.  Petitioner's counseled request for permission to appeal was rejected by the Pennsylvania Supreme Court in August, 2000.  Id.  Petitioner did not file a petition for writ of habeas corpus until December, 2001.  Petitioner argued he was entitled to tolling of AEDPA's one year limitation period because he did not receive notice of the Pennsylvania Supreme Court's denial of his request for permission to appeal until December, 2001.  Id. at 276.  The Court of Appeals found no extraordinary circumstance sufficient to warrant equitable tolling.  Id.  Assuming the delayed notice constituted extraordinary circumstances, the Court of Appeals found petitioner did not exercise requisite due diligence because more than twenty-one months elapsed from the filing of his petition for allowance of appeal until his inquiry as to its status with the Pennsylvania Supreme Court.  Id. at 277.

Both Schleuter and LaCava distinguished the Court of Appeals' decision in Seitzinger v. Reading Hospital and Medical Center, 165 F.3d 236 (3d Cir. 1999).  In Seitzinger, after receiving a right-to-sue letter, a client decided to bring a Title VII suit against her former employer.  Id. at 238.  Counsel wrote to the client and informed her he was drafting the complaint.  Id.  Before the limitation period expired, the client called counsel to make sure he filed the complaint on time, and counsel assured her he had done so.  Id.  Counsel filed the complaint after the limitation period had expired.  Id.  The Court of Appeals noted the client "appeared to have been extremely diligent in pursuing her claim"; she hired an attorney and contacted him before the filing deadline

to ensure he had filed the complaint, and repeatedly called him for a copy of the complaint and information on her case. Id. at 241. The Court of Appeals remanded to the district court to decide whether equitable tolling applied. Id. at 242.

Smith's actions are more like those of petitioners in Schleuter and LaCava than those of the client in Seitzinger. Even if Smith's counsel misrepresented to him that the trial date would be rescheduled, and failed to notify him that trial would proceed on June 30, Smith did not attempt to contact his counsel or the court to determine his trial date any time after June, 1998. In contrast to the client in Seitzinger, who repeatedly called her counsel to inquire about her case, Smith did not inquire about his case for two-and-a-half years after the date he was subpoenaed for trial, and two years after he was sentenced *in absentia*. Smith was even less diligent than the petitioners in Schleuter and LaCava, who discovered their limitation periods had run after they made inquiries with the state court; Smith discovered he was tried and sentenced *in absentia*, not because of his own diligence, but because he was arrested on unrelated charges. Smith has not met the due diligence standard for equitable tolling.

The circumstances in Schleuter and LaCava differ from circumstances here in that Smith was tried and convicted *in absentia*. Here, Smith claims he did not have notice of his conviction and sentencing *in absentia*. If his allegations are true, he could not have been aware he had a limited amount of time to challenge the conviction or sentence. This distinction does not change the outcome.

In Pennsylvania, when a defendant is absent without cause at the time his trial is scheduled to begin, he may be tried *in absentia*. Commonwealth v. Sullens, 533 Pa. 99, 104 (1992). Smith claims he failed to read the trial subpoena informing him the trial was scheduled

14

for June 29, 1998. It appears there was no record of Smith's correct home address at 2234 Cross Street, so the prosecutor could not contact him with notice of his trial. It is unclear whether the arresting officer misrecorded Smith's address as 2234 Ellsworth Street, or whether Smith deliberately provided the wrong address, but Smith later signed a bail application listing two incorrect home addresses. He again claimed he had not read the bail application before signing it.

Smith knew there were outstanding charges against him for robbery, assault, and theft by unlawful taking, and did not attempt to follow up on those charges after the date he was scheduled to appear for trial. Smith did not have reason to believe the outstanding charges would be dismissed. He failed to exercise due diligence in light of his knowledge of the outstanding charges. Smith is not without fault that his trial and sentencing were held *in absentia*. He is not entitled to equitable tolling for the time period between December 7, 1998, and January 23, 2001.

It is not necessary to determine whether Smith is entitled to equitable tolling from May 30, 2001, to December 1, 2004, because the court's finding that Smith is not entitled to equitable tolling during the previous time period is sufficient to deny his habeas petition as untimely.[2]

### III.   CONCLUSION

Respondents' motion to strike will be denied as moot. Magistrate Judge Rice's Report

---

[2]It is not likely Smith would be entitled to equitable tolling from May 30, 2001, to December 1, 2004. "Where a petitioner is ultimately able to file his habeas petition, with or without having received replacement materials, the deprivation of legal documents does not justify equitable tolling." Satterfield v. Johnson, 434 F.3d 185, 196 (3d Cir. 2006). Smith argues he believed he would not be able to file an effective habeas petition without his trial or sentencing transcripts. The habeas petition Smith ultimately filed relies on the claim that he was unjustly tried and sentenced *in absentia*. It was possible for Smith to file this habeas petition without reviewing the transcripts of his trial or sentencing.

and Recommendation will be approved and adopted, and Smith's objections will be overruled.

Smith's petition for writ of habeas corpus will be denied as untimely.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEREK SMITH** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT SHANNON, SUPT., THE** | : | |
| **DISTRICT ATTORNEY OF THE COUNTY** | : | |
| **OF PHILADELPHIA (LYNN ABRAHAM),** | : | |
| **THE ATTORNEY GENERAL OF THE** | : | |
| **STATE OF PENNSYLVANIA** | : | **NO. 05-1431** |

**ORDER**

    **AND NOW**, this 7th day of January, 2008, upon consideration of petitioner's petition for writ of habeas corpus, the Report and Recommendation of United States Magistrate Judge Timothy R. Rice, petitioner's counseled objections to the report and recommendation, the parties' proposed findings of fact and conclusions of law, respondents' motion to strike testimony, petitioner's response, and all other relevant papers in the record, following an evidentiary hearing and oral argument, for the reasons set forth in the accompanying memorandum, it is **ORDERED** that:

    1.    Respondents' motion to strike testimony (paper no. 47) is **DENIED AS MOOT**.

    2.    The Report and Recommendation (paper no. 18) is **APPROVED** and **ADOPTED**.

    3.    The petition for a writ of habeas corpus (paper no. 1) is **DENIED with prejudice**.

    4.    Petitioner's objections (papers no. 20, 22) are **OVERRULED**.

    5.    Because petitioner has failed to make a substantial showing of the denial of a constitutional right, there is no basis for issuing a certificate of appealability.

    6.    The Clerk of Court is directed to mark this case **CLOSED**.

                              /s/ Norma L. Shapiro
                                                  S.J.